UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA *ex rel.* DEBORAH SOUZA,
    Plaintiff,

v.

EMBRACE HOME LOANS, INC.;
DENNIS HARDIMAN; KURT NOYCE;
and ROBERT LAMY,
    Defendants.

C.A. No. 1:22-cv-00453-JJM-PAS

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Defendants'—Embrace Home Loans, Inc. ("Embrace"), Dennis Hardiman, Kurt Noyce, and Robert Lamy—Renewed Motion to Dismiss for Failure to State a Claim. ECF No. 86. The Court DENIES Defendants' Motion to Dismiss. *Id.*

### I.    BACKGROUND

Ms. Souza worked as an underwriter at Embrace from September 2016 until February 2019, when Embrace terminated her. ECF No. 84 at ¶ 83. She focused on underwriting government-insured loans like those backed by the Federal Housing Administration ("FHA").[1] *Id.* at ¶ 84. Ms. Souza has sued Embrace for violating the

---

[1] FHA is an arm of the United States Department of Housing and Urban Development ("HUD") that insures loans that are issued by pre-approved lenders. *The Federal Housing Administration (FHA)*, U.S. DEP'T OF HOUS. AND URB. DEV.,

False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* ECF No. 1. She alleges that "Embrace knew, deliberately ignored, and recklessly disregarded the fact that many of its loans did not comply with HUD's underwriting requirements, and thus were not eligible for FHA mortgage insurance." ECF No. 84 at ¶ 215. Ms. Souza additionally alleges that Embrace retaliated against her by firing her when she raised these issues. *Id.* at ¶¶ 497-507.

Ms. Souza claims that misconduct was prevalent at Embrace years before she even started working there. *See* ECF No. 84 at ¶ 215 ("From at least 2009 to July 29, 2022, Embrace has engaged in a regular policy and practice of reckless origination and underwriting of its FHA loans and falsely certifying to the FHA that those loans were eligible for FHA insurance."). The United States Attorney's Office for the Northern District of New York investigated Ms. Souza's claims for over three years but declined to intervene. *See* ECF No. 16. Even so, the FCA permits relators to pursue such actions where the Government declined to intervene in the name of the United States. 31 U.S.C. § 3730(b)(1). The case was transferred from the United States District Court for the Northern District of New York to this Court. ECF No. 71. Defendants then renewed their Motion to Dismiss. ECF No. 86.

---

https://www.hud.gov/program_offices/housing/fhahistory (last accessed May 26, 2023 11:25 AM).

## II. STANDARD OF REVIEW

### A. Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

### B.     Pleading False Claims Under Federal Rule of Civil Procedure 9(b)

Pleading false claims under the FCA must comply with the requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See, e.g., Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 31 (1st Cir. 2016). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A party must specifically identify the "who, what, when, where, and how of the alleged fraud." *Hagerty*, 844 F.3d at 31 (internal quotation marks omitted) (citation omitted). "Because FCA liability attaches only to false claims, . . . merely alleging facts related to a defendant's alleged misconduct is not enough . . . . Rather, a complaint based on [the FCA] must sufficiently establish that false claims were submitted for government payment as a result of the defendant's alleged misconduct." *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 123 (1st Cir. 2013) (internal quotation marks omitted) (citations omitted).

Still, a court must "[v]iew[] the complaint holistically" to determine whether a plaintiff "pleaded sufficient facts to provide fair notice to the defendant[ ] and state a facially plausible legal claim." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (alteration in original) (internal quotation marks omitted) (citation omitted). Moreover, "there is no checklist of mandatory requirements that each allegation in a complaint must meet to satisfy Rule 9(b)." *Hagerty*, 844 F.3d at 31 (internal quotation marks omitted) (citation omitted).

## III. DISCUSSION

The parties' briefs effectively present three issues. First is whether the complaint plausibly states claims that Defendants knowingly submitted false claims in violation of the FCA. Second is whether the complaint plausibly states a claim for retaliation under the FCA. Third is whether some claims related to quality control must be dismissed because they fall outside the statute of limitations. The Court addresses each issue in turn.

### A. Whether the Complaint Plausibly Alleges False Claims

In essence, the complaint alleges that Embrace violated various HUD regulations concerning its loan underwriting—while certifying otherwise to HUD—which led it to endorse loans for FHA insurance that were not eligible for such insurance.[2] *See* ECF No. 84 at ¶¶ 215-27. Accordingly, Ms. Souza claims that fraudulently obtaining FHA insurance on ineligible loans constitutes false claims under the FCA. *Id.* at ¶¶ 508-19. Defendants respond that, even if Embrace committed regulatory violations,[3] no evidence connects these violations to claims that Embrace submitted to the Government. ECF No. 86 at 16. In other words, Ms. Souza failed to plead how Embrace's policies and practices directly led it to submit any specific loan for FHA insurance that it knew did not comply with HUD regulations.

---

[2] While the Court primarily discusses the endorsement of ineligible loans for FHA insurance as the source of potential false claims, other conduct that the Court discusses later also might be the source of false claims.

[3] Defendants dispute that Embrace committed any regulatory violations but nonetheless accept Ms. Souza's pleading of regulatory violations as true for purposes of Rule 12(b)(6) and Rule 9(b). ECF No. 86 at 16 & n.6.

5

*See id.* Defendants also argue that Ms. Souza has not pleaded her claims with sufficient detail as required by Rule 9(b). *Id.* at 2.

"[F]raud under the FCA has two components: the defendant must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent." *Hagerty*, 844 F.3d at 31 (citation omitted). The person submitting the false claim also must "ha[ve] actual knowledge of the information," "act[] in deliberate ignorance of the truth or falsity of the information," or "act[] in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The Court first discusses the specific false claims that Ms. Souza alleges and then turns to the scienter element.

### 1. Ms. Souza's Allegations of False Claims

Ms. Souza alleges that inappropriate underwriting by Embrace led to its endorsement of ineligible loans for FHA insurance. *See* ECF No. 84 at ¶¶ 215-27. Specifically, Ms. Souza points to seven problematic practices. *Id.* at 27-76.

1. Embrace pressured employees to endorse loans that failed to meet HUD regulations while certifying compliance with them to HUD. *Id.* at 27-29.

2. Embrace organized its operations such that sales employees could ignore underwriters' decisions (itself an alleged violation of HUD regulations), which interfered with compliance with other HUD regulations. *Id.* at 29-31.

3. Embrace issued a directive that underwriters could not decline an FHA loan no matter if it complied with HUD regulations. *Id.* at 31-33.

4. Because loan officers could choose a closing deadline and Embrace would pay the fee if the loan failed to close on time, underwriters were inappropriately pressured to approve ineligible loans. *Id.* at 33-35.

5. If a loan had been conditionally approved, executives would pressure underwriters to ultimately approve that loan even if it remained non-compliant. *Id.* at 35-36.

6. Embrace failed to maintain quality control processes that complied with HUD regulations. *Id.* at 36-51.

7. Embrace manipulated its automatic underwriting system ("AUS") to approve loans that were ineligible for FHA insurance. *Id.* at 51-76.

The complaint specifically identifies material underwriting deficiencies for forty loans. *See* ECF No. 84-1. Ms. Souza alleges that Embrace endorsed these loans for FHA insurance despite knowing, or having should have known, that they were ineligible (i.e., Embrace submitted false claims). *See, e.g.*, ECF No. 87 at 21 ("[T]hese allegations cannot be read in isolation without the . . . forty examples in Exhibit 1."). The circumstances of these loans are identified with sufficient detail to satisfy Rule 9(b). Ms. Souza provided dates on which Embrace reviewed and endorsed the loan, along with the dates on which the loan defaulted and Embrace submitted claims to FHA. *See* ECF No. 84-1. Ms. Souza also included the loan's number—with the corresponding FHA case number—along with its underwriter's identification and the

7

property's location. *See id.* But a regulatory infraction alone is insufficient for FCA liability. *See Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016) ("The False Claims Act is not . . . a vehicle for punishing garden-variety . . . regulatory violations.").

Ms. Souza thus highlights several other example loans—which the complaint identified by FHA case number and approximate dates of underwriting and endorsement for insurance—that Embrace issued and explains how Embrace's underwriting practices in each instance violated HUD requirements. ECF No. 84 at 54-76. These instances represent examples of how the implementation of a problematic practice led to a regulatory violation:

> These false certifications were a direct and logical result of the underwriting process at Embrace: allowing loan officers to exert undue influence on underwriters; instructing underwriters to always approve a loan; overruling underwriters when they tried to deny a loan; creating a quality control process that ignored problems; and creating an underwriting process that failed to obtain necessary documents, ignored documents that indicated a loan was ineligible for FHA insurance, and excessively ran loans through the AUS.

*Id.* at ¶ 406. Accordingly, Ms. Souza has pled with sufficient specificity that Defendants submitted false claims to the Government.

### 2. Whether Defendants Acted with Scienter

The complaint also identifies specific conduct from which scienter can be inferred. Defendants intentionally developed and implemented practices—e.g., sales staff overriding underwriting decisions, the "do not decline" policy, the "guaranteed on-time close" policy, and the manipulation of AUS—that led to submitting false claims despite their representations otherwise to HUD. ECF No. 84 at 27-76. The

8

United States Supreme Court recently held that, in the context of a pharmacy seeking reimbursement under Medicare and Medicaid, a plaintiff,

> may establish scienter by showing that [defendants] (1) actually knew that their reported [higher] prices were not their "usual and customary" prices when they reported those prices, (2) were aware of a substantial risk that their higher, retail prices were not their "usual and customary" prices and intentionally avoided learning whether their reports were accurate, or (3) were aware of such a substantial and unjustifiable risk but submitted the claims anyway.

*United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1404 (2023).

Here, Defendants, on one hand, cannot claim to know and have complied with HUD regulations while, on the other hand, have developed and implemented practices[4] that led to the underwriting of dozens of loans that allegedly violated the same HUD regulations. *See supra* Part III.A.1 (detailing these practices). If Embrace underwrote all these ineligible loans, despite certifying their compliance with HUD regulations, its endorsement of these loans for FHA insurance would be, at least, ignoring a "substantial risk" that its underwriting practices were deficient. *Schutte*, 143 S. Ct. at 1404. Likewise, if Defendants claim to have known and have complied with HUD regulations while failing to catch dozens of alleged underwriting deficiencies, they at least ignored a "substantial risk" that their quality control processes were inadequate. *Id.* Further, one might even reasonably infer from these

---

[4] Ms. Souza also alleges that at least one of these practices itself violates HUD regulations. *See* ECF No. 84 at ¶ 241 (alteration in original) (citation omitted) ("FHA guidelines are clear that '[t]he Mortgagee must ensure that its underwriters are not managed by and do not report to any individual who performs mortgage origination activities.'").

9

facts that Defendants knew they were falsely endorsing loans for FHA insurance because of these practices.

While many allegations refer to only Embrace, or Defendants more generally, Ms. Souza also highlights specific conduct by individual Defendants. Individual Defendants oversaw Embrace's underwriting of these loans, they developed and implemented the problematic policies, and they individually pressured underwriters. *Id.* at ¶¶ 489, 492-96. As reasoned above, individual Defendants cannot have been so deeply involved with these practices while not, at least, recklessly disregarding the fact that they led to Embrace's submission of false claims. In fact, Mr. Noyce and Mr. Lamy traveled to Washington, D.C. to meet with HUD about its termination of Embrace's ability to underwrite FHA loans in 2013. *Id.* at ¶¶ 490-91. At this meeting, these two individuals allegedly failed to report the ongoing fraud while falsely affirming the compliance of Embrace's underwriting. *Id.* Ms. Souza further details examples of individual Defendants engaging in this conduct. For example, on January 15, 2019, Mr. Lamy allegedly directed an underwriter "to remove the 1040's from the file and not hit[] the borrower for any unreimbursed expense," which otherwise would have made the loan ineligible for FHA insurance. *Id.* at ¶ 369 (internal quotation marks omitted). Accordingly, Ms. Souza has pleaded with sufficient specificity that Defendants acted with scienter.

### B. Whether the Complaint Plausibly Alleges Retaliation Under the FCA

Ms. Souza additionally alleges that Embrace retaliated against her by firing her for raising concerns over improper practices. ECF No. 84 at ¶¶ 520-27. To allege

a prima facie case for retaliation, a plaintiff must allege that: 1. She engaged in a protected conduct; 2. Her employer knew that she engaged the protected conduct; and 3. Her termination resulted because of the protected conduct. *Harrington v. Aggregate Indus-N.E. Region, Inc.*, 668 F.3d 25, 31 (1st Cir. 2012) (citations omitted).

Protected conduct includes "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more [FCA] violations." 31 U.S.C. § 3730(h)(1). By questioning Embrace's underwriting, Ms. Souza attempted to prevent the submission of false claims. *See, e.g.*, ECF No. 84 at ¶ 322 (Ms. Souza "raised numerous instances of fraud and material representation in loan files that, to her knowledge, was never 'immediately,' or ever for that matter, reported to HUD"). She did not need to know, or even suspect, that the conduct that she reported actually violated the FCA specifically. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 238-39 (1st Cir. 2004), *abrogated on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008). When she first started working at Embrace, Ms. Souza recalls that a supervisor and an executive told her that she could not decline to issue a loan and forced her to approve a loan despite her suggesting to managers that the loan failed to meet FHA requirements. ECF No. 84 at ¶¶ 222, 263. She also recalls that two executives told her to find a way to approve loans that loan officers sent to her, despite her relaying that these loans failed to meet FHA requirements. *Id.* at ¶¶ 266, 267. Ms. Souza thus sufficiently alleged that she engaged in protected conduct.

A plaintiff can satisfy the employer knowledge requirement by alleging that she presented concerns to her employer about submitting false claims. *See Karvelas*, 360 F.3d at 239. Ms. Souza raised concerns, orally and in writing, with various Embrace executives. *See* ECF No. 104 at ¶ 502-03. Moreover, the complaint alleges that Ms. Souza explicitly raised concerns over Embrace's underwriting practices with various executives. *Id.* at ¶ 504 ("During [a] meeting [with Embrace executives], [Ms. Souza] made clear that Embrace was committing material violations of government loan requirements and that [Ms. Souza] felt Embrace's practices were putting pressure on her to fraudulently submit files for government insurance that she was not comfortable with."). Ms. Souza thus sufficiently alleged that Embrace was aware of Ms. Souza's protected conduct.

Finally, a plaintiff must show that she was terminated because of her protected conduct. *Harrington*, 668 F.3d at 31 (citations omitted). Ms. Souza repeatedly raised concerns over Embrace's underwriting, which led her manager to tell executives that Ms. Souza was frustrated with her work. *See, e.g., id.* at ¶¶ 222, 263, 266-67. During the later meeting with Embrace executives over these concerns, one executive allegedly suggested that this position "was not the right marriage for [Ms. Souza]." *Id.* at ¶ 504. Temporal proximity between the termination and protected conduct can also support an inference of causation. *Harrington*, 668 F.3d at 32 (citing *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 50 (1st Cir. 2010); *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25-26 (1st Cir. 2004)). Here, Ms. Souza was fired just over three months after her manager voiced concerns to Embrace executives about

her fitting in, which places Ms. Souza's meeting with the executives even closer to the termination.[5] This fact bolsters her claim. Ms. Souza thus sufficiently alleged that she was terminated for engaging in protected conducted. Accordingly, Ms. Souza's complaint meets all the requirements for alleging retaliation under the FCA.

### C. Whether Some Claims Fall Outside the Statute of Limitations

Defendants lastly argue that Ms. Souza's amended complaint expands the timeframe to include claims that fall outside the statute of limitations. ECF No. 86 at 28-32. The FCA's statute of limitations provides a couple possible timeframes, but, regardless of the circumstances, it bars claims that are brought more than ten years after the violation was committed. 31 U.S.C. § 3731(b). Ms. Souza filed her first complaint on February 14, 2019. ECF No. 1. She filed her amended complaint on February 10, 2023. ECF No. 84. Therefore, any new claims in the amended complaint that concern conduct before February 10, 2013 must relate back to the original complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure ("Rule 15(c)") to avoid falling outside the statute of limitations. *See* Fed. R. Civ. P. 15(c).

Rule 15(c) relevantly provides that: "An amendment to a pleading relates back to the date of the original pleading when \* \* \* the amendment asserts a claim or

---

[5] As Ms. Souza's brief notes, the complaint erroneously dates Ms. Souza's manager's actions to October 25, 2019—a date several months after Embrace terminated her. *See* ECF No. 104 at ¶ 504. Given the liberal standard of Federal Rule of Civil Procedure 15(a), the Court also grants Ms. Souza leave to amend her complaint to fix this error. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984) (citing 3 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 15.15[3], at 15-194 (1984)). Meaning, "amendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding pleading fall within Rule 15(c)(1)(B)." 6A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 1497 (Apr. 2023 Update). But "[a]mendments that . . . significantly alter the claim or defense alleged in that pleading are treated more cautiously." *Id.*

In questioning relation back, Defendants seem to focus specifically on the allegations about Embrace's quality control processes. *See* ECF No. 86 at 28-29. While the original complaint includes allegations that Embrace's quality control program was deficient (*see* ECF No. 1 at ¶¶ 462-80), Defendants contend that additions in the amended complaint constitute separate conduct from that originally pleaded (ECF No. 86 at 29). As for quality control, the original complaint alleges, "[g]iven that Embrace knew, or should have known, that its quality control process and training was materially defective in that it continued to submit loans with material violations for government insurance, Embrace . . . failed to live up to its certifications." ECF No. 1 at ¶ 480. And Ms. Souza supports this claim with specifics.

14

For example, she notes that, when reviewing a loan application, "[d]ocuments contained in the loan file should be checked for sufficiency and subjected to written reverification. Examples of items that must be reverified include, but are not limited to, the mortgagor[']s employment or other income, deposits, gift letters, alternate credit sources, and other sources of funds." *Id.* at ¶ 465 (citations omitted). These types of issues are the same deficiencies that Ms. Souza highlights in her amended complaint. *See, e.g.*, ECF No. 84-1 (listing loans issued despite material deficiencies in their underwriting).

Still, Defendants claim that Ms. Souza added three new distinct allegations: 1. "Embrace had no process to discuss issues identified by quality control until 2012"; 2. "Embrace hid its quality control findings from HUD"; and 3. "Embrace's process of reviewing the quality control findings of its vendors was deficient." ECF No. 86 at 31 (citations omitted). Ms. Souza responds that these actions were part of "the same alleged defective underwriting scheme, with the same quality control program, against the same defendants." ECF No. 87 at 29. While Ms. Souza did not originally allege the specific facts from the allegations to which Defendants refer in her original complaint, she does refer to HUD regulations that concern such conduct. *See* ECF No. 1 at ¶¶ 462-75. For example, the original complaint notes that "[t]he HUD Handbook recommends a 'system of evaluating each Quality Control sample on the basis of the severity of the violations found during the review.'" *Id.* at ¶ 467. The amended complaint thus expands on Embrace's failure to meet this standard by noting that it lacked such processes until 2012. At the very least, Defendants had

notice that Ms. Souza was concerned about Embrace's meeting this regulatory standard. *See Brown*, 466 U.S. at 149 n.3 (citation omitted).

The original complaint additionally notes that, despite "rais[ing] numerous instances of fraud and material representation in loan files[,] . . . [Embrace] never 'immediately,' or ever for that matter, reported [these instances] to HUD." ECF No. 1 at ¶ 479. While not specifically referring to quality control findings, this allegation effectively claims that Embrace hid regulatory violations—and potentially outright fraud—from HUD. The original complaint lastly alleges that, despite requirements to review quality control samples, "Embrace failed to provide . . . staff with adequate training and feedback pertaining to violations of government requirements." *Id.* at ¶ 476. The amended complaint provides more specific details on how Embrace's quality control vendor intentionally understated the significance of defects that it had found with loans. ECF No. 84 at ¶ 311. Additionally, the quality control vendor allegedly found defect rates ranging from thirty percent to almost eighty-seven percent over multi-month periods. *Id.* at ¶ 312. These new allegations appear to build directly on the original allegations that Embrace failed to maintain an adequate quality control system, including "[in]adequate training and feedback" on deficiencies. *See* ECF No. 1 at ¶¶ 467, 476. Again, Embrace at least had notice that Ms. Souza was concerned about Embrace's review of its quality control findings. Accordingly, Ms. Souza's allegations in the amended complaint relate back to those in the original complaint in accordance with Rule 15(c).

## IV.  CONCLUSION

For these reasons, the Court DENIES Defendants' Renewed Motion to Dismiss for Failure to State a Claim.  ECF No. 86.  The Court further GRANTS Ms. Souza leave to amend her complaint so that she can fix the error identified in paragraph 504 of the complaint.  ECF No. 87 at 32 & n.15.  Ms. Souza will have fourteen days to file a second amended complaint.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

June 28, 2023