# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DEBORAH SOUZA,<br><br>        Plaintiff,<br><br>v.<br><br>EMBRACE HOME LOANS, INC., DENNIS HARDIMAN, KURT NOYCE, and ROBERT LAMY,<br><br>        Defendants. | Case No. 22-cv-00453-JJM-PAS<br><br>Hon. John J. McConnell |

## DEFENDANTS EMBRACE HOME LOANS, INC., DENNIS HARDIMAN, KURT NOYCE, AND ROBERT LAMY'S ANSWER TO SECOND AMENDED *QUI TAM* COMPLAINT AND DEMAND FOR A JURY TRIAL

Defendants Embrace Home Loans, Inc. ("Embrace"), Dennis Hardiman, Kurt Noyce, and Robert Lamy, by and through their undersigned attorneys, hereby answer the Second Amended *Qui Tam* Complaint and Demand for a Jury Trial ("2AC") filed by Plaintiff-Relator Deborah Souza.

### DEFENDANTS' PRELIMINARY STATEMENTS

Defendants hereby answer the allegations in the 2AC jointly.

This Answer includes for organizational purposes the headings used by Plaintiff-Relator in the 2AC. Such headings are used solely for purposes of organization given the length of the 2AC, and Defendants reject and deny the characterizations contained in such headings and no use herein shall in any way be considered an admission by any of the Defendants. To the extent any specific response is required with respect to such headings, Defendants deny the same.

The paragraphs in the 2AC at times contain multiple subparagraphs. Defendants have not responded to subparagraphs specifically and, unless otherwise specifically provided, the answers to the subparagraphs are contained within the answer to the primary paragraph number.

Defendants deny the allegations contained in, characterizations of, or any other content related to Exhibit 1 to the 2AC or any other extraneous document incorporated into the 2AC by reference.

The paragraph numbers in this Answer correspond with the paragraph numbers of the 2AC and respond to the allegations of the corresponding paragraph.

Defendants deny all allegations not specifically admitted.

Defendants deny that Plaintiff-Relator is entitled to the relief sought in the 2AC or to any relief whatsoever.

## **DEFENDANTS' SPECIFIC ANSWERS**

## **ALLEGATIONS REGARDING UNNUMBERED INITIAL MATERIAL**

The unnumbered material on page 1 of the 2AC contains introductory and general allegations that are not directed specifically to Defendants, and therefore requires no response by Defendants. To the extent a response is required, Defendants admit that Plaintiff-Relator filed her Complaint alleging four causes of action under provisions of the False Claims Act, including one that she has since dropped following the Government's three-year investigation of her claims and her initial review of discovery provided to her in this matter. Defendants further admit that the United States declined to intervene in this case, at which point Plaintiff-Relator's Complaint was unsealed. Defendants further admit that Plaintiff-Relator has now amended her Complaint, ostensibly at the direction of the Court in its June 28, 2023 Order, but amending other content in the Complaint despite the Court's instruction that she was given leave to amend to "fix the error identified in paragraph 504 of the [First Amended Complaint]." ECF No. 96 at 17. Defendants

specifically deny that the Complaint was served on all Defendants on May 27, 2022, because the only Defendant served that day was Embrace (despite Embrace having agreed, through counsel, to waive service), and Defendants Hardiman, Noyce, and Lamy waived service. ECF Nos. 28–30. Defendants deny all remaining allegations contained in the unnumbered initial material.

## **ALLEGATIONS AS TO INTRODUCTION**

1.      The allegations contained in Paragraph 1 are introductory and conclusory in nature, and therefore require no response. To the extent a response is required, Defendants state that Plaintiff-Relator purports to assert claims under the False Claims Act on behalf of the United States and seeks relief and damages for purported injuries to the Department of Housing and Urban Development ("HUD") and Federal Housing Administration ("FHA"). Defendants deny that any or all of them violated the False Claims Act, caused any purported injuries, or that Plaintiff-Relator or the United States are entitled to any relief from Defendants. Defendants deny all remaining allegations in Paragraph 1.

2.      In response to the allegations contained in Paragraph 2, Defendants admit only that, during the so-defined "Claims Time Period," Embrace was approved by the Department of Housing and Urban Development ("HUD") to underwrite and originate single-family residential mortgage loans insured by FHA, but otherwise deny all remaining allegations in Paragraph 2.

3.      The terms of the FHA Direct Endorsement Program speak for themselves, and Defendants deny any characterization or interpretation inconsistent therewith.

4.      The terms of the FHA Direct Endorsement Program speak for themselves, and Defendants deny any characterization or interpretation inconsistent therewith.

5.      HUD's underwriting requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, the allegations of Paragraph 5 are vague, ambiguous, and imprecise, and so are denied. Defendants deny all

allegations contained in the second sentence of Paragraph 5. Further responding, the FHA Program and the applicable guidelines were and are designed to expand homeownership, and Defendants made and approved loans pursuant to FHA guidelines in reliance on HUD's guaranty that it was providing insurance against the risk of borrower default. Plaintiff-Relator's after-the-fact attempt to shift that exact risk of loss back to Defendants, purportedly on behalf of the United States, HUD, and/or FHA is completely unfair and legally insupportable. Defendants deny all remaining allegations contained in Paragraph 5.

6.      The requirements of the FHA Direct Endorsement Program speak for themselves, and Defendants deny any characterization or interpretation inconsistent therewith.

7.      Paragraph 7 contains introductory and general allegations, which are not directed specifically to Defendants, and therefore requires no response by Defendants. To the extent a response is required, the terms of the FHA Direct Endorsement Program speak for themselves, and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 7. Further responding, the allegations of Paragraph 7 are vague, ambiguous, and imprecise, and so are denied. Further responding, the FHA Program and the applicable guidelines were and are designed to expand homeownership, and Defendants made and approved loans pursuant to FHA guidelines in reliance on HUD's guaranty that it was providing insurance against the risk of borrower default. Plaintiff-Relator's after-the-fact attempt to shift that exact risk of loss back to Defendants, purportedly on behalf of the United States, HUD, and/or FHA is completely unfair and legally insupportable. Defendants deny all remaining allegations contained in Paragraph 7.

8.      Defendants lack sufficient knowledge or information to admit or deny the allegations of Paragraph 8, and so deny them.

9.      Defendants deny all allegations contained in Paragraph 9. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling post endorsement technical review ("PETR") reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.

10.      Defendants deny all allegations contained in Paragraph 10.

11.      Defendants admit that Embrace sold FHA-backed loans on the secondary mortgage market. Further responding, the FHA sets underwriting requirements for its loans and Embrace made and approved loans pursuant to FHA guidelines in reliance on HUD's guaranty that it was providing insurance against the risk of borrower default. Defendants deny all remaining allegations contained in Paragraph 11.

12.      Defendants deny all allegations contained in Paragraph 12.

13.      Defendants deny all allegations contained in Paragraph 13.

14.      Defendants deny all allegations contained in Paragraph 14.

15.      Defendants deny all allegations contained in Paragraph 15. Further responding, Embrace established a robust Quality Control program and took its obligations under the FHA program seriously, going so far as to close two offices that had underwriting issues and discussing that situation in a face-to-face meeting with HUD representatives.

16.      The allegations in the first and second sentences in Paragraph 16 are too vague and imprecise to require a response because of the use of the term "material," and so are denied. Further responding, Defendants deny that the allegations of the Paragraph 16 accurately reflect Embrace's

quality control report findings. Defendants deny all remaining allegations contained in Paragraph 16.

17.    Defendants admit that Embrace underwrote loans for FHA insurance went to claim. Further responding, Defendants deny the implication that any FHA loan going to claim is an indication that the loan was improperly underwritten or an indication of defective lending practices, particularly in the case of the FHA Program, which specifically exists to allow Direct Endorsement underwriters to rely on HUD's guaranty that it will provide insurance against the risk of borrower default in order to allow lenders to extend credit to potential homeowners who might not otherwise qualify. Defendants deny all remaining allegations contained in Paragraph 17.

18.    Defendants admit that Embrace self-reported loans underwritten for FHA insurance. Defendants deny all remaining allegations contained in Paragraph 18.

19.    Paragraph 19 contains introductory and general allegations that are not directed specifically to Defendants, and therefore requires no response by Defendants. To the extent a response is required, Defendants deny that Plaintiff-Relator is entitled to treble damages and penalties under the False Claims Act or to any damages whatsoever. Defendants deny all remaining allegations contained in Paragraph 19.

## ALLEGATIONS RELATED TO JURISDICTION AND VENUE

60.    The allegations contained in Paragraph 60 state conclusions of law to which no response is required. To the extent a response is required, Defendants deny all allegations contained in Paragraph 60.[1]

---

[1]    The 2AC does not contain Paragraphs numbered 20–59. ECF No. 97 at 6.

61.     The allegations contained in Paragraph 61 state conclusions of law to which no response is required. To the extent a response is required, Defendants do not object to subject matter jurisdiction.

62.     The allegations contained in Paragraph 62 state conclusions of law to which no response is required. To the extent a response is required, Defendants do not object to personal jurisdiction.

63.     Defendants admit the allegations contained in Paragraph 63.

64.     Defendants admit that Embrace transacts business within the District of Rhode Island. The remaining allegations contained in Paragraph 64 state conclusions of law to which no response is required. To the extent a response is required, Defendants do not object to venue in this District.

65.     Defendants do not have sufficient information to admit or deny the allegations contained in Paragraph 65 and therefore deny all allegations contained in Paragraph 65.

66.     Defendants do not have sufficient information to admit or deny the allegations contained in Paragraph 66 and therefore deny all allegations contained in Paragraph 66.

67.     Defendants deny the allegations contained in Paragraph 67.

68.     Defendants do not have sufficient information to admit or deny the allegations contained in Paragraph 68 and therefore deny all allegations contained in Paragraph 68.

69.     Defendants do not have sufficient information to admit or deny the allegations contained in Paragraph 69 and therefore deny all allegations contained in Paragraph 69.

## ALLEGATIONS RELATED TO THE PARTIES

*Allegations Related to Defendants*

70.     Defendants admit the allegations contained in Paragraph 70.

71.     Defendants admit the allegations contained in Paragraph 71.

72.     Defendants admit the allegations contained in Paragraph 72.

73.     Defendants deny all allegations contained in Paragraph 73.

74.     Defendants admit that Embrace has branches in Alabama, Delaware, Florida, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, Rhode Island, South Carolina, Virginia, and West Virginia. Defendants deny that Embrace has branches in Connecticut or Pennsylvania. Defendants deny all remaining allegations contained in Paragraph 74.

75.     Defendants admit the allegations contained in Paragraph 75.

76.     Defendants deny the allegations contained in Paragraph 76 and specifically state that Hardiman did not become significantly involved in Embrace policies and procedures until roughly 2016.

77.     Defendants admit that Noyce is the former President of Embrace. Defendants deny all remaining allegations contained in Paragraph 77.

78.     Defendants admit that Noyce helped to develop policies and procedures at Embrace in his role as President. Defendants deny all remaining allegations contained in Paragraph 78.

79.     Defendants admit the allegations contained in Paragraph 79.

80.     Defendants admit that Lamy helped to develop some policies and procedures at Embrace early in his career at Embrace, but deny that he was involved in the development of these policies for most of the Relevant Time Period as defined by Plaintiff-Relator. Defendants deny all remaining allegations contained in Paragraph 80.

81.     Defendants admit that Plaintiff-Relator has made certain allegations in the 2AC, which allegations are denied. Defendants deny all remaining allegations contained in Paragraph 81.

*Allegations Related to Relator*

82.    Defendants admit, on information and belief, the allegations contained in Paragraph 82.

83.    Defendants admit the allegations contained in Paragraph 83.

84.    Defendants deny the allegations contained in Paragraph 84.

85.    Defendants lack sufficient knowledge or information to admit or deny the allegations contained in Paragraph 85 regarding Plaintiff-Relator's work history and therefore deny them. Defendants deny that Plaintiff-Relator has extensive knowledge of HUD rules and regulations regarding FHA loans. In fact, many of the allegations in the 2AC affirmatively demonstrate a lack of such knowledge.

86.    Defendants do not have sufficient information to admit or deny the allegations contained in Paragraph 86 and therefore deny all allegations contained in Paragraph 86.

## ALLEGATIONS RELATED TO THE FALSE CLAIMS ACT

87.    Paragraph 87 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 87 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

88.    Paragraph 88 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 88 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

89.    Paragraph 89 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 89 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

90.    Paragraph 90 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 90 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

91.    Paragraph 91 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 91 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

92.    Paragraph 92 contains legal conclusions which therefore require no response. To the extent a response is required, the statute and court decision referenced in Paragraph 92 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

93.    Paragraph 93 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 93 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

## ALLEGATIONS RELATED TO BACKGROUND

***Allegations Related to HUD's FHA Mortgage Insurance Program***

94.    Defendants admit the allegations contained in Paragraph 94.

95.    HUD's mission is set forth in federal legislation and regulations. Defendants deny the allegations of Paragraph 95 to the extent they are inconsistent therewith.

96.    HUD's mission is set forth in federal legislation and regulations. Defendants deny the allegations of Paragraph 96 to the extent they are inconsistent therewith..

97.    Defendants admit the allegations of Paragraph 97.

98.    Defendants admit the allegations of Paragraph 98.

99.    Defendants admit that HUD provides insurance to lenders against losses on FHA mortgage loans, and thereby assumes all contractual and special duties that an insurer owes to its insured, including to act in good faith; to handle claims and issues of insurability fairly and

consistent with its general claims-handling processes and requirements (including the agreement that loan insurability will be evaluated on a loan-level basis); to construe the insurance contract reasonably, consistent with the parties' course of dealing, and in light of the expectation that the default risk is insured and therefore the responsibility of HUD; to honor its insurance obligations; and not to sue its insured improperly to recover for covered claims. HUD owes a fiduciary duty to its insureds, including Embrace, as a result of HUD's position of dominance and control over mortgagees who participate in the FHA Program.

100.    Defendants admit the allegations contained in Paragraph 100.

101.    Defendants admit that HUD provides insurance to lenders against losses on FHA mortgage loans, and therefore may pay the holder of a mortgage the outstanding balance on a loan and other costs associated with the loan in the event of default. Defendants further admit that Embrace has underwritten FHA mortgage loans that have defaulted. Defendants deny all other allegations in Paragraph 101 including any implication that Embrace underwrote an abnormally high number of loans on which HUD paid in the event of default.

102.    Defendants lack sufficient information to admit or deny the allegations of Paragraph 102 and therefore deny all of them.

103.    Defendants admit that the FHA program is designed to encourage lenders to make loans to applicants who otherwise would have difficulty qualifying for conventionally available financing. Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 103 and therefore deny all remaining allegations.

104.    Defendants admit that the FHA program is designed to help borrowers who otherwise would have a difficult time qualifying for conventionally available financing. Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 104 and therefore deny all remaining allegations.

105.    The statutes, regulations, and guidelines and other matter governing the Direct Endorsement Lender program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 105.

106.    The regulation referenced in Paragraph 106 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 106.

107.    Paragraph 107 contains legal conclusions which therefore require no response. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 107.

108.    The regulation referenced in Paragraph 108 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

109.    The statutes, regulations, guidelines and other material governing the Direct Endorsement Lender program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing

other guidance, and which are subject to the general understandings of underwriting judgment and diligence, and Defendants state that this description is a gross oversimplification of the FHA Program's requirements.

110. The statutes, regulations, guidelines and other material governing the Direct Endorsement Lender program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.

111. The statutes, regulations, guidelines and other material governing the Direct Endorsement Lender program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.

112. The regulation referenced in Paragraph 112 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which

are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence.

113.    The documents referenced in Paragraph 113 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

114.    The HUD Program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

115.    The court decisions referenced in Paragraph 115 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

116.    Defendants deny all allegations contained in Paragraph 116 and specifically deny that Embrace owed a fiduciary duty to HUD.

***Allegations Regarding HUD's Direct Endorsement Program***

117.    The allegations of Paragraph 117 are too vague and imprecise to require a response because of the use of the term "proper underwriting," and so are denied. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 117.

118.    Paragraph 118 contains introductory and general allegations, which are not directed specifically to Defendants, and therefore requires no response by Defendants. To the extent a response is required, Defendants admit that the Direct Endorsement Lender Program is voluntary. Defendants deny all remaining allegations contained in Paragraph 118.

119.    The allegations of Paragraph 119 are too vague and imprecise to require a response because of the use of the term "integrity," and so are denied. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 119.

120.    HUD should have been and was in fact aware of the risks it was assuming for FHA-insured loans. To the extent a response is required, Defendants deny all remaining allegations contained in Paragraph 120.

121.    Defendants admit the allegations contained in Paragraph 121.

122.    Defendants deny the allegations contained in Paragraph 122.

123.    The regulation referenced in Paragraph 123 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith.

124.    Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the

general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 124.

125.    The statutes, regulations, guidelines and other material governing the Direct Endorsement Lender program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 125.

126.    The allegations of Paragraph 126 are too vague and imprecise to require a response, for there is no explanation of what "aspects" means, and so Defendants deny them. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 126.

127.    The allegations of Paragraph 127 are too vague and imprecise to require a response, for there is no explanation of what "due diligence" or "accuracy" means, and so Defendants deny them. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to

interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 127.

128.    The regulations and documents referenced in Paragraph 128 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

129.    The regulations and documents referenced in Paragraph 129 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 129.

130.    The regulations and documents referenced in Paragraph 130 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 130.

**_Allegations Regarding the FHA's Due Diligence Requirements_**

131.    The allegations of Paragraph 131 are too vague and imprecise to require a response, for there is no explanation of what "[p]roper due diligence" means, and so Defendants deny them. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 131.

132.     The allegations of Paragraph 132 are too vague and imprecise to require a response, for there is no explanation of what "[p]roper due diligence"—to which "[i]t" in Paragraph 132 appears to refer—means, and so Defendants deny them. Further responding, the regulations and documents referenced in Paragraph 132 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 132.

133.     The allegations of Paragraph 133 are too vague and imprecise to require a response, for there is no explanation of what "[p]roper due diligence"— to which "[i]t" in Paragraph 133 appears to refer —means, and so Defendants deny them. Defendants also deny that they owe HUD any fiduciary duty. Further responding, the regulation referenced in Paragraph 133 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 133.

134.    The court decision referenced in Paragraph 134 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 134.

135.    Defendants deny all allegations contained in Paragraph 135 based on their denials of the paragraphs on which Paragraph 135 relies.

136.    Defendants deny that a fiduciary relationship exists between HUD and Direct Endorsement lenders. Further responding, this relationship is defined by statutes, regulations, and guidance that speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

137.    Defendants deny that a fiduciary relationship exists between HUD and Direct Endorsement lenders. Further responding, this relationship is defined by statutes, regulations, and guidance that speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

138.    The documents referenced in Paragraph 138 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-

up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 138.

139.    Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 139.

140.    The regulation referenced in Paragraph 140 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 140.

141.    Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 141.

142.    The documents referenced in Paragraph 142 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 142.

143.    The documents referenced in Paragraph 143 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants admit that the government has promulgated handbooks related to the underwriting of government loans. Defendants deny all remaining allegations in Paragraph 143.

144.    The documents referenced in Paragraph 144 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants admit that FHA Handbook 4000.1 is a handbook that was promulgated by HUD. Defendants deny all remaining allegations in Paragraph 144.

145.    The documents referenced in Paragraph 145 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants admit that HUD Handbook 4155.1 is a handbook that was promulgated by HUD. Defendants deny all remaining allegations in Paragraph 145.

146.    The regulation referenced in Paragraph 146 speaks for itself and is the best evidence of its contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of

applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 146.

147.    The documents referenced in Paragraph 147 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 147.

148.    The documents referenced in Paragraph 148 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 148.

149.     The documents referenced in Paragraph 149 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 149.

150.     Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 150.

151.     The documents referenced in Paragraph 151 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are

subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 151.

152.    The documents referenced in Paragraph 152 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 152.

153.    The regulations referenced in Paragraph 153 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 153.

154.    The documents referenced in Paragraph 154 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to

interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 154.

### *Allegations Regarding Certifications and Endorsements for FHA Insurance*

155.    The requirements referenced in Paragraph 155 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 155.

156.    The requirements referenced in Paragraph 156 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 156.

### *Allegations Regarding FHA Initial Certifications to HUD*

157.    The certification referenced in Paragraph 157 speaks for itself and is the best evidence of its contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 157.

158.    The requirements referenced in Paragraph 158 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 158.

### *Allegations Regarding FHA Annual Certification Requirements*

159.    The requirements referenced in Paragraph 159 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 159.

160.    The certification referenced in Paragraph 160 speaks for itself and is the best evidence of its contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 160.

161.    The certification referenced in Paragraph 161 speaks for itself and is the best evidence of its contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 161.

162.    The certification referenced in Paragraph 162 speaks for itself and is the best evidence of its contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 162.

163.    The certification referenced in Paragraph 163 speaks for itself and is the best evidence of its contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 163.

164.    The certifications referenced in Paragraph 164 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 164.

***Allegations Regarding Embrace's annual certifications to the FHA on its operations***

165.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

166.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

167.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

168.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

169.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

170.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

171.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

172.    The allegations of Paragraph 172 are too vague and imprecise to require a response, for there is no explanation of what "needed" means, and so deny them. Further responding, Defendants state that the allegations of Paragraph 172 are an oversimplification and incomplete characterization of HUD program requirements and safeguards and, therefore, deny those allegations.

***Allegations Regarding FHA Individual Loan Certifications***

173.    The documents referenced in Paragraph 173 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 173.

174.    The HUD Program requirements speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 174.

175.    The requirements referenced in Paragraph 175 speak for themselves and are the best evidence of their contents and deny any characterization or interpretation inconsistent therewith. Defendants admit that AUS is a software system connecting to TOTAL and that certified underwriters may use AUS/TOTAL. Defendants deny all remaining allegations in Paragraph 175.

176.     The requirements referenced in Paragraph 176 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 176.

177.     The documents referenced in Paragraph 177 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 177.

178.     The documents referenced in Paragraph 178 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 178.

179.     Defendants admit that the AUS processes information entered and provides a recommendation. Defendants deny all remaining allegations in Paragraph 179.

180.     The documents referenced in Paragraph 180 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 180.

181.     The documents and certification referenced in Paragraph 181 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 181.

182.     The documents and certification referenced in Paragraph 182 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 182.

183.     The documents and certification referenced in Paragraph 183 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often

vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 183.

184.    The regulations and certifications referenced in Paragraph 184 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent followup, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 184.

185.    The allegations contained in Paragraph 185 are too vague and imprecise to require a response, for there is no explanation of what "entitled" means, and so Defendants deny them. Defendants deny all remaining allegations in Paragraph 185.

186.    FHA's regulations and guidelines speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants admit that FHA regulations require certifications. Defendants deny all remaining allegations in Paragraph 186.

187.    FHA's regulations and guidelines speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, the allegations contained in Paragraph 187 are too vague and imprecise to

require a response, for there is no explanation of what "entitled" means, and so Defendants deny them. Defendants deny all remaining allegations in Paragraph 187.

188.    Defendants lack sufficient information to admit or deny the allegations of Paragraph 188 and therefore deny them.

189.    Defendants lack sufficient information to admit or deny the allegations of Paragraph 189 and therefore deny them.

190.    FHA's regulations and guidelines speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 190.

191.    Defendants lack sufficient information to admit or deny the allegations of Paragraph 191 and therefore deny them.

192.    The allegations of Paragraph 192 are too vague and imprecise to require a response, for there is no explanation of what "essential" means, and so Defendants deny them. Further responding, Defendants lack sufficient information to admit or deny the allegations of Paragraph 192 and therefore deny them.

193.    The allegations of Paragraph 193 are too vague and imprecise to require a response, for there is no explanation of what "needed" means, and so Defendants deny them. Further responding, Defendants lack sufficient information to admit or deny the allegations of Paragraph 193 and therefore deny them.

***Allegations Regarding Defaulted Loans Result in Losses to the Government***

194.    The HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations of Paragraph 195.

195.    The certifications referenced in Paragraph 195 speak for themselves and are the best evidence of their contents and deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations of Paragraph 195.

196.    The guidelines of the FHA Program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations of Paragraph 196.

197.    The guidelines of the FHA Program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations of Paragraph 197.

198.    The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations of Paragraph 198.

199.    The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations of Paragraph 199.

200.    The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 200.

201.    The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete

characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 201.

202. The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 202.

203. The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 203.

204. The guidelines of the FHA program and the documents referenced in Paragraph 204 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 204.

205. The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 205.

206. The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith.

Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 206.

207.    The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 207.

208.    Defendants deny any damages to the United States as a result of Embrace's conduct. Defendants deny all remaining allegations of Paragraph 208.

209.    Defendants deny any damages to the United States as a result of Embrace's conduct. Defendants deny all remaining allegations of Paragraph 209.

210.    Defendants deny any damages to the United States as a result of Embrace's conduct. Defendants deny all remaining allegations of Paragraph 210.

211.    The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 211.

212.    The guidelines of the FHA program speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the referenced provisions are a complete characterization of applicable claim submission requirements. Defendants deny all remaining allegations of Paragraph 212.

213.     Defendants deny any damages to the United States as a result of Embrace's conduct. Defendants deny all remaining allegations of Paragraph 213.

214.     Defendants deny any damages to the United States as a result of Embrace's conduct. Defendants deny all remaining allegations of Paragraph 214.

## ALLEGATIONS REGARDING EMBRACE CREATED A NATIONWIDE SCHEME OF IMPROPER UNDERWRITING, DUE DILIGENCE, AND SALES PRACTICES WHICH IT KNEW, OR SHOULD HAVE KNOWN, WOULD RESULT IN FALSE CLAIMS

215.     Defendants deny all allegations contained in Paragraph 215.

216.     FHA's requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all allegations contained in the second sentence of Paragraph 216. Defendants deny all remaining allegations of Paragraph 216.

217.     Defendants deny all allegations contained in Paragraph 217.

218.     Defendants admit that Embrace established underwriting policies and deny all remaining allegations contained in Paragraph 218.

219.     Defendants admit that Robert Lamy was Director of Risk Management at Embrace and that Sara Davis was Vice President of Underwriting at Embrace.  Defendants deny all remaining allegations of Paragraph 219.

220.     Defendants admit that Embrace communicated with its underwriting staff. Defendants deny all remaining allegations of Paragraph 220.

221.    Defendants deny all allegations contained in Paragraph 221.

222.    Defendants lack sufficient information to admit or deny the allegations of Paragraph 222 and therefore deny them.

223.    Defendants deny all allegations contained in Paragraph 223.

224.    Defendants deny all allegations contained in Paragraph 224.

225.    Defendants deny all allegations contained in Paragraph 225.

226.    Defendants deny all allegations contained in Paragraph 226 and specifically deny that they defaulted at a "significantly higher rate than comparable mortgagees," as shown in statistics pleaded by Plaintiff-Relator in her original Qui Tam Complaint and Demand for a Jury Trial (Dkt. No. 1) and refuted in Embrace's first Motion to Dismiss, leading to Plaintiff-Relator removing those statistics from her First Amended Qui Tam Complaint and Demand for a Jury Trial (Dkt. No. 84).

227.    Defendants deny all allegations contained in Paragraph 227 and specifically deny that they defaulted at a "significantly higher rate than comparable mortgagees," as shown in statistics pleaded by Plaintiff-Relator in her original Qui Tam Complaint and Demand for a Jury Trial (Dkt. No. 1) and refuted in Embrace's first Motion to Dismiss, leading to Plaintiff-Relator removing those statistics from her First Amended Qui Tam Complaint and Demand for a Jury Trial (Dkt. No. 84).

***Allegations Regarding Embrace Improperly Pressured Employees to Endorse Ineligible Mortgages in Violation of HUD Requirements***

228.    The regulations and documents referenced in Paragraph 228 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD

employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations of Paragraph 228.

229.   Defendants admit that Embrace filed certifications with FHA as required by FHA regulations and deny all remaining allegations contained in Paragraph 229.

230.   The regulations referenced in Paragraph 230 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations of Paragraph 230.

231.   Defendants deny all allegations contained in Paragraph 231.

232.   Defendants admit that Embrace required underwriters to obtain approval from management before denying an FHA loan application, consistent with FHA underwriting guidelines and deny the remaining allegations in subparagraph a of Paragraph 232. Defendants admit that Embrace implemented a Guaranteed On-Time Close program and deny the remaining allegations in subparagraph b of Paragraph 232. Defendants admit that underwriters were recognized on many metrics of performance including accuracy, volume, and customer service, and deny the remaining allegations of subparagraph e of Paragraph 232. Defendants admit that underwriters were trained to treat loan officers as their "customer," meaning they must perform well, respond within reasonable timeframes, and communicate appropriately as a way to generate

better working relationships, as one part of its efforts to improve the often contentious relationships between employees at different states of the loan process often tolerated in the mortgage loan industry and deny all other allegations of subparagraph g of Paragraph 232. Defendants deny all allegations contained in subparagraphs c, d, f, and i of Paragraph 232. Defendants deny all remaining allegations of Paragraph 232.

233.    Defendants deny all allegations contained in Paragraph 233.

234.    Defendants deny all allegations contained in Paragraph 234.

235.    Defendants deny all allegations contained in Paragraph 235.

236.    Defendants deny all allegations contained in Paragraph 236.

237.    Defendants deny all allegations contained in Paragraph 237.

238.    Defendants deny all allegations contained in Paragraph 238.

239.    Defendants deny all allegations contained in Paragraph 239.

240.    Defendants deny all allegations contained in Paragraph 240.

***Allegations Regarding Embrace's Underwriters Were Managed by Mortgage Originators in Violation of FHA Rules***

241.    The documents referenced in Paragraph 241 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations of Paragraph 241.

242.    The FHA Program regulations speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

243.    Defendants deny all allegations contained in Paragraph 243.

244.    The documents cited in Paragraph 244 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 244.

245.    Defendants deny all allegations contained in Paragraph 245.

246.    Defendants admit that Embrace underwriters were trained to treat loan officers as their "customer," meaning they must perform well, respond within reasonable timeframes, and communicate appropriately as a way to generate better working relationships, as one part of its efforts to improve the often contentious relationships between employees at different states of the loan process often tolerated in the mortgage loan industry.  Defendants deny all remaining allegations of Paragraph 246.

247.    Defendants deny all allegations contained in Paragraph 247.

248.    Defendants deny all allegations contained in Paragraph 248.

249.    Defendants admit that Embrace introduced customer service scores for operational employees including processors, underwriters, and closers in May 2011 based on surveys sent to loan originators after closing. Defendants deny all remaining allegations contained in Paragraph 249.

250.    Defendants admit that Embrace introduced customer service scores for operational employees including processors, underwriters, and closers in May 2011 based on surveys sent to loan originators after closing and further admit that results of these surveys were used to coach and recognize underwriters as well as to allow management to recognize areas where communication could be improved. Defendants deny all remaining allegations contained in Paragraph 250.

251.    Defendants admit that at least at some times, the customer service surveys had six questions related to underwriting and admit that the three categories listed in Paragraph 251 were among those used. Defendants deny all remaining allegations contained in Paragraph 251.

252.    Defendants deny all allegations contained in Paragraph 252.

253.    Defendants admit that Embrace maintained underwriter "stats" for the purpose of monitoring consistency among its staff and to reward top performers. Defendants further admit that customer service score was one of these metrics. Defendants deny all other allegations contained in Paragraph 253.

254.    Defendants deny all allegations contained in Paragraph 254.

255.    The requirements referenced in Paragraph 255 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 255.

256.    Defendants deny all allegations contained in Paragraph 256.

257.    Defendants deny all allegations contained in Paragraph 257.

258.    Defendants deny all allegations contained in Paragraph 258.

259.    Defendants deny all allegations contained in Paragraph 259.

***Allegations Regarding Embrace's "Do Not Decline" Directive Resulted in Embrace Falsely Representing to the Government that its Loans Complied with HUD and FHA Requirements***

260.    Defendants deny all allegations contained in Paragraph 260.

261.    Defendants deny all allegations contained in Paragraph 261.

262.    The regulations referenced in Paragraph 262 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors

answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 262.

263.    Defendants do not have sufficient information to admit or deny the allegations contained in Paragraph 263 and therefore deny all allegations contained in Paragraph 263. Defendants also deny that the allegations reflect Embrace policies.

264.    Defendants deny all allegations contained in Paragraph 264 and specifically deny the implication that Embrace instructed underwriters to not follow FHA guidelines in underwriting loans.

265.    Defendants deny all allegations contained in Paragraph 265.

266.    Defendants deny all allegations contained in Paragraph 266 and specifically deny the implication that Embrace instructed underwriters to not follow FHA guidelines in underwriting loans.

267.    Defendants deny all allegations contained in Paragraph 267 and specifically deny the implication that Embrace instructed underwriters to not follow FHA guidelines in underwriting loans.

268.    Defendants deny all allegations contained in Paragraph 268.

269.    Defendants admit that, pursuant to FHA guidelines, a second sign-off is required before a loan under the FHA program could be denied. Defendants deny all remaining allegations contained in Paragraph 269.

270.    Defendants admit that loans were reassigned to and from underwriters for a multitude of reasons, all of them consistent with FHA regulations and guidelines. Defendants deny all remaining allegations contained in Paragraph 270.

271.    Defendants deny all allegations contained in Paragraph 271.

272.    Defendants deny all allegations contained in Paragraph 272.

***Allegations Regarding Embrace's "Guarantee to Close" Policy Resulted in Embrace Falsely Representing to the Government that Ineligible Loans Complied [with] FHA Requirements***

273.    Defendants deny all allegations contained in Paragraph 273.

274.    Defendants admit that Embrace introduced a "Guaranteed On-Time Close" policy in July 2017 that paid to VA, FHA, and conventional loan customers $2,500 if Embrace failed to close by the customer's closing date and the fault was Embrace's. The policy guaranteed an *on-time* closing, not a guaranteed approval. Further responding, Embrace's website speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations of Paragraph 274.

275.    Defendants admit that Embrace introduced a "Guaranteed On-Time Close" policy in July 2017 that paid to VA, FHA, and conventional loan customers $2,500 if Embrace failed to close by the customer's closing date and the fault was Embrace's. Defendants deny all remaining allegations of Paragraph 275 and specifically deny that Embrace made any guarantee that a loan would close under the Guaranteed On-Time Close program.

276.    Defendants deny all allegations contained in Paragraph 276.

277.    Defendants deny all allegations contained in Paragraph 277.

278.    Defendants lack sufficient information to admit or deny that Hardiman, Noyce, and McGuiness participated in a video introducing the Guaranteed On-Time Close program, and therefore deny those allegations. Defendants deny all remaining allegations contained in Paragraph 278 and specifically deny that the term "guaranteed close," used in scare quotes in Paragraph 278, is a quote ever stated by Hardiman, Noyce, McGuiness, or anyone else communicating the policy to staff.

41

279.    Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 279 and so deny them.

280.    Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 280 and so deny them.

281.    Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 281 and so deny them.

282.    Defendants deny the allegations contained in Paragraph 282.

283.    Defendants deny the allegations contained in Paragraph 283.

284.    Defendants deny the allegations contained in Paragraph 284.

285.    Defendants deny the allegations contained in Paragraph 285.

286.    The allegations contained in Paragraph 286 are incomprehensible and so Defendants deny them.

287.    Defendants deny the allegations contained in Paragraph 287.

*Allegations Regarding Embrace's Quality Control Process was Grossly Inadequate and Further Evidences Embrace's Disregard for FHA Requirements*

288.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 288.

289.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that

the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 289.

290.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 290.

291.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 291.

292.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that

the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 292.

293.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 293.

294.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 294.

295.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that

the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 295.

296.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 296.

297.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 297.

298.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that

the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 298.

299.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 299.

300.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 300.

301.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that

the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 301.

302.    Defendants deny the allegations contained in Paragraph 302.

303.    Defendants deny the allegations contained in Paragraph 303.

304.    Defendants deny the allegations contained in Paragraph 304.

305.    Defendants admit that Embrace has used outside quality control vendors to supplement its own internal quality control processes and specifically deny that this practice is contrary to any HUD policy, regulation or guidance. Further responding, the allegations in the first and third sentences of Paragraph 305 are too vague and imprecise to require a response, for there is no explanation of what "formal process" means, and so Defendants deny them. Defendants deny all remaining allegations contained in Paragraph 305.

306.    Embrace quality control vendors' reports speak for themselves and deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 306.

307.    Defendants deny all allegations contained in Paragraph 307.

308.    Defendants deny all allegations contained in Paragraph 308.

309.    Defendants deny all allegations contained in Paragraph 309.

310.    Defendants deny all allegations contained in Paragraph 310.

311.    Defendants deny all allegations contained in Paragraph 311.

312.    Embrace quality control vendors' reports speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 312.

313.    Embrace quality control vendors' reports speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 313.

314.    Defendants admit that Fannie Mae conducted a MORA audit at Embrace in 2017. Defendants deny all remaining allegations contained in Paragraph 314.

315.    Defendants deny all allegations contained in Paragraph 315.

316.    Defendants deny all allegations contained in Paragraph 316.

317.    Defendants admit that Hardiman is Embrace's CEO and has been a member of its Compliance Committee since 2020, and deny that he was a member of the Compliance Committee prior to that time. Defendants deny all remaining allegations contained in Paragraph 317.

318.    Defendants deny all allegations contained in Paragraph 318.

319.    Defendants deny all allegations contained in Paragraph 319.

320.    Defendants deny all allegations contained in Paragraph 320.

321.    Defendants admit that Embrace had a Chief Compliance Officer and that Mr. Noyce was Embrace's President. Defendants deny all remaining allegations contained in Paragraph 321.

322.    Defendants admit that Plaintiff-Relator raised purported issues with Embrace's underwriting policies and procedures related to government loans and conventional loans while employed at Embrace, all of which were entirely baseless. Defendants deny all allegations contained in Paragraph 322.

323.    Defendants deny all allegations contained in Paragraph 323.

324.    Defendants deny all allegations contained in Paragraph 324, including the allegation or implication that the definition of "material" used in Embrace quality control reports is the same definition used by HUD to determine loans that must be reported.

325.    Defendants admit that Plaintiff-Relator attached an exhibit to the 2AC that purports to be a list of loans. Defendants deny all remaining allegations contained in Paragraph 325 and Exhibit 1 to the 2AC.

***Allegations Regarding Annual certifications***

326.    Defendants admit that Embrace submitted annual certifications to HUD as part of its Direct Endorsement Lender Program. Defendants deny all remaining allegations contained in Paragraph 326.

327.    Defendants admit that Embrace submitted annual certifications to HUD as part of its Direct Endorsement Lender Program. Further responding, the certifications referenced in Paragraph 327 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 327.

328.    Defendants admit that Embrace submitted annual certifications to HUD as part of its Direct Endorsement Lender Program. Further responding, the certifications and documents referenced in Paragraph 328 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 328.

329.    Defendants deny all allegations contained in Paragraph 329.

330.    Defendants deny all allegations contained in Paragraph 330.

331.    Defendants deny all allegations contained in Paragraph 331.

332.    Defendants deny all allegations contained in Paragraph 332.

333.    Defendants deny all allegations contained in Paragraph 333.

334.    Defendants deny all allegations contained in Paragraph 334.

335.    Defendants deny all allegations contained in Paragraph 323.

336.    Defendants deny all allegations contained in Paragraph 336.

337.    Defendants deny all allegations contained in Paragraph 337.

338.    Defendants deny all allegations contained in Paragraph 338.

***Allegations Regarding Loan-level certifications***

339.    The certifications and documents referenced in Paragraph 339 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 339.

340.    Defendants deny all allegations contained in Paragraph 340.

341.    Defendants deny all allegations contained in Paragraph 341.

342.    Defendants deny all allegations contained in Paragraph 342.

343.    Defendants deny that the descriptions are accurate or complete characterizations of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 343.

344.    Defendants deny all allegations contained in Paragraph 344.

345.    Defendants deny that the descriptions are accurate or complete characterizations of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction,

handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 345.

346.     Defendants deny all allegations contained in Paragraph 346.

347.     Defendants deny all remaining allegations contained in Paragraph 347.

348.     Defendants deny all allegations contained in Paragraph 348.

349.     Defendants deny all allegations contained in Paragraph 349.

***Allegations Regarding Embrace Knowingly Violated Specific HUD Requirements Governing the Origination and Underwriting of FHA-Insured Mortgages***

350.     Defendants deny all allegations contained in Paragraph 350.

351.     Defendants deny all allegations contained in Paragraph 351.

352.     The regulations referenced in Paragraph 352 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 352.

353.     Defendants deny all allegations contained in Paragraph 353.

354.     Defendants deny all allegations contained in Paragraph 354.

***Allegations Regarding Embrace Knowingly Made False Statements to the Government Pertaining to the Quality of its Underwriting Process and Endorsed Loans***

355.     Defendants deny all allegations contained in Paragraph 355.

356.     Defendants deny all allegations contained in Paragraph 356.

357.     Defendants deny all allegations contained in Paragraph 357.

358.     Defendants admit that Lamy received emails from HUD confirming receipt of Embrace's annual certifications. Defendants deny all remaining allegations of Paragraph 358.

359.     Defendants deny all allegations contained in Paragraph 359.

360.     Defendants deny all allegations contained in Paragraph 360.

***Allegations Regarding Embrace Falsely Represented to the Government that it Properly
Documented Loan Files in Compliance with FHA Requirements***

361.    The regulations and guidelines referenced in Paragraph 361 speak for themselves
and Defendants deny any characterization or interpretation inconsistent therewith. Further
responding, Defendants deny that the description is a complete characterization of applicable
underwriting requirements, which are complex and often vague and subject to interpretation, and
which are modified and superseded by decisions, directions and concessions made by HUD
employees and contractors answering lenders' questions, providing direction, handling PETR
reports and subsequent follow-up, and providing other guidance, and which are subject to the
general understandings of underwriting judgment and diligence. Defendants deny all remaining
allegations contained in Paragraph 361.

362.    The documents referenced in Paragraph 362 speak for themselves and Defendants
deny any characterization or interpretation inconsistent therewith. Further responding, Defendants
deny that the description is a complete characterization of applicable underwriting requirements,
which are complex and often vague and subject to interpretation, and which are modified and
superseded by decisions, directions and concessions made by HUD employees and contractors
answering lenders' questions, providing direction, handling PETR reports and subsequent follow-
up, and providing other guidance, and which are subject to the general understandings of
underwriting judgment and diligence. Defendants deny all remaining allegations contained in
Paragraph 362.

363.    The documents referenced in Paragraph 363 speak for themselves and Defendants
deny any characterization or interpretation inconsistent therewith. Further responding, Defendants
deny that the description is a complete characterization of applicable underwriting requirements,
which are complex and often vague and subject to interpretation, and which are modified and
superseded by decisions, directions and concessions made by HUD employees and contractors

answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations contained in Paragraph 363.

364.    Defendants deny all allegations contained in Paragraph 364.

365.    Defendants admit that their loan file document system included a "Miscellaneous" folder. Defendants deny all remaining allegations contained in Paragraph 365, and specifically deny that placing a document into the "Miscellaneous" folder removed it from a loan file.

366.    Defendants deny all allegations contained in Paragraph 366.

367.    Defendants deny all allegations contained in Paragraph 367.

368.    Defendants admit that the loan files prepared for and sent to investors or HUD were not required to contain all documents in the loan file, and therefore documents in the loan file were not always included in the final loan package. Defendants deny all remaining allegations contained in Paragraph 368.

369.    Defendants admit that Lamy sent an email on January 19, 2019 providing his good faith interpretation of FHA underwriting guidelines in response to a question from an Embrace underwriter and fully stating as follows:

> Since the borrower is a wage earner 1040s are not required to document income per FHA guidelines. In addition the income section of 4001.1 only references the need to deduct unreimbursed expense in the borrowers with greater than 25% commission income. Tip income is not commission income. Since FHA is shut down and we cannot talk to an underwriter I am ok with removing the 1040's from the file and not hitting the borrower for any unreimbursed expense. Once FHA reopens we will get a clear interpretation of the guideline so we can publish guidance moving forward.

Defendants deny all remaining allegations contained in Paragraph 369.

370.    Defendants deny all allegations contained in Paragraph 370.

371.    Defendants deny all allegations contained in Paragraph 371.

372.    Defendants deny all allegations contained in Paragraph 372.

373.    Defendants deny all allegations contained in Paragraph 373.

374.    Defendants deny all allegations contained in Paragraph 374.

375.    Defendants deny all allegations contained in Paragraph 375.

376.    Defendants deny all allegations contained in Paragraph 376.

377.    Defendants deny all allegations contained in Paragraph 377.

***Allegations Regarding Embrace Manipulated the AUS/TOTAL System in Order to Endorse Ineligible Loans for FHA Insurance***

378.    Defendants admit that Paragraphs 175–82 of the 2AC purport to describe the AUS/TOTAL system. Defendants deny all remaining allegations in Paragraph 378.

379.    The documents referenced in Paragraph 379 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 379.

380.    Defendants admit that TOTAL provides recommendations on loans based on data input. Defendants deny all remaining allegations in Paragraph 380.

381.    Defendants admit that TOTAL processes information and provides recommendations. Defendants deny all remaining allegations in Paragraph 381.

382.    The documents referenced in Paragraph 382 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 382.

383.    The documents referenced in Paragraph 382 speak for themselves and are the best evidence of their contents and deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 383.

384.    The documents referenced in Paragraph 384 speak for themselves and are the best evidence of their contents and deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 384.

385.    The guidelines referenced in Paragraph 385 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 385.

386.    The documents referenced in Paragraph 386 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 386.

387.    The documents referenced in Paragraph 387 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 387.

388.    Defendants admit that TOTAL processes information and provides recommendations. Defendants deny all remaining allegations in Paragraph 388.

389.    The regulation referenced in Paragraph 389 speaks for itself and is the best evidence of its contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 389.

390.    The guidelines referenced in Paragraph 390 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are

subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 388.

391.    The documents referenced in Paragraph 391 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 391.

392.    The FHA program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 392.

393.    The FHA program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 393.

394.    Defendants deny all allegations contained in Paragraph 394.

395.    Defendants state that a bad actor could theoretically, as posited in this Paragraph, misuse the AUS. Defendants deny all remaining allegations in Paragraph 395.

396.    The allegations of Paragraph 396 contain speculation not directed at Defendants and therefore require no response by Defendants. To the extent a response is required, Defendants deny all allegations in Paragraph 396.

397.    The FHA program requirements speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Further responding, Defendants deny that the description is a complete characterization of applicable underwriting requirements, which are complex and often vague and subject to interpretation, and which are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and which are

subject to the general understandings of underwriting judgment and diligence. Defendants deny all remaining allegations in Paragraph 397.

398.    Defendants deny all allegations contained in Paragraph 398.

399.    Defendants deny all allegations contained in Paragraph 399.

400.    Defendants deny all allegations contained in Paragraph 400.

401.    Defendants deny all allegations contained in Paragraph 401 and specifically deny that there is any fiduciary relationship.

402.    Defendants deny all allegations contained in Paragraph 402.

***Allegations Regarding Examples of Embrace's False Certifications on Individual Loans***

403.    Defendants deny all allegations contained in Paragraph 403.

404.    Defendants deny all allegations contained in Paragraph 404.

405.    Defendants deny all allegations contained in Paragraph 405.

406.    Defendants deny all allegations contained in Paragraph 406.

407.    Defendants deny all allegations contained in Paragraph 407.

408.    Defendants admit that Embrace underwrote the loan with FHA Case Number 132-2223773 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 408 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 408 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 408 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 408, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 408 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 408.

409.    Defendants admit that Embrace underwrote the loan with FHA Case Number 011-6242985 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 409 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 409 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 409 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 409, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 409 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 409.

410.    Defendants admit that Embrace underwrote the loan with FHA Case Number 541-9186975 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 410 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 410 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 410 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 410, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 410 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 410.

411.    Defendants admit that Embrace underwrote the loan with FHA Case Number 156-0159751 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 411 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 411 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 411 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 411, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 411 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 411.

412.    Defendants admit that Embrace underwrote the loan with FHA Case Number 352-6802934 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 412 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 412 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 412 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 412, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 412 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 412.

413.    Defendants admit that Embrace underwrote the loan with FHA Case Number 222-1955626 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 413 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 413 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 413 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 413, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 413 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 413.

414.    Defendants admit that Embrace underwrote the loan with FHA Case Number 292-5419581 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 414 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 414 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 414 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 414, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 414 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 414.

415.    Defendants admit that Embrace underwrote the loan with FHA Case Number 352-6857229 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 415 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 415 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 415 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 415, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 415 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 415.

416.    Defendants admit that Embrace underwrote the loan with FHA Case Number 544-1171837 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 416 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 416 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 416 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 416, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 416 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 416.

417.    Defendants admit that Embrace underwrote the loan with FHA Case Number 387-0699867 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 417 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 417 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 417 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 417, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 417 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 417.

418.    Defendants admit that Embrace underwrote the loan with FHA Case Number 201-5255093 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 418 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 418 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 418 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 418, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 418 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 418.

419.    Defendants admit that Embrace underwrote the loan with FHA Case Number 231-1493989 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 418 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 418 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 418 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 418, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 418 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 418.

420.    Defendants admit that Embrace underwrote the loan with FHA Case Number 446-4000295 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 420 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 420 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 420 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 420, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 420 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 420.

421.    Defendants admit that Embrace underwrote the loan with FHA Case Number 251-6387584 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 421 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 421 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 421 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 421, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 421 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 421.

422.    Defendants admit that Embrace underwrote the loan with FHA Case Number 061-5321886 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 422 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 422 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 422 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 422, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 422 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 422.

423.    Defendants admit that Embrace underwrote the loan with FHA Case Number 251-6191028 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 423 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 423 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 423 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 423, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 423 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 423.

424.    Defendants admit that Embrace underwrote the loan with FHA Case Number 451-1651510 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 424 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 424 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 424 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 424, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 424 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 424.

425.    Defendants admit that Embrace underwrote the loan with FHA Case Number 251-6169089 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 425 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 425 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 425 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 425, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 425 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 425.

426.     Defendants admit that Embrace underwrote the loan with FHA Case Number 351-7131269 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 426 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 426 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 426 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 426, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 426 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 426.

427.    Defendants admit that Embrace underwrote the loan with FHA Case Number 231-1424137 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 427 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 427 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 427 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 427, of which the loan is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 427 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 427.

428.    Defendants admit that Embrace underwrote the loan with FHA Case Number 351-7256783 and the loan was approved for FHA insurance. Defendants deny that Embrace did not engage in proper due diligence in its underwriting of the loan referenced in Paragraph 428 or that the loan was improperly underwritten and approved to pursuant to FHA and HUD underwriting guidelines. Defendants further deny that interpretations of FHA loan underwriting guidelines and principles contained in Paragraph 428 are incorrect, and further state that these guidelines are complex and often vague and subject to interpretation, and are modified and superseded by decisions, directions and concessions made by HUD employees and contractors answering lenders' questions, providing direction, handling PETR reports and subsequent follow-up, and providing other guidance, and are subject to the general understandings of underwriting judgment

and diligence. Defendants further deny that facts alleged in Paragraph 428 regarding the documents or information contained in the loan file, communications exchanged regarding the underwriting of the loan, and any other fact regarding the underwriting of the loan are correct, and state the evidence at trial will reflect as much. Defendants further deny that any of the alleged conduct described elsewhere in the 2AC affected the underwriting of the loan referenced in Paragraph 428, of which the loan described in Paragraph 428 is purported to be an example. Defendants further deny that the submission of a claim for FHA insurance on a loan is evidence that the loan was improperly underwritten, as the purpose of the FHA program is to allow borrowers who otherwise would not qualify for traditional mortgage loans to obtain such a loan. Defendants further deny that even if the loan referenced in Paragraph 428 was underwritten or approved for FHA insurance improperly pursuant to FHA underwriting guidelines that such underwriting or approval was done with the required intent under the False Claims Act to constitute a false claim, and that any such improper underwriting or approval was the result of a good faith mistake. Defendants deny all remaining allegations contained in Paragraph 428.

429.    Defendants deny all allegations contained in Paragraph 429.

***Allegations Regarding Embrace's False Statements Were Material to the Government's Decision to Pay Claims***

430.    Defendants deny all allegations contained in Paragraph 430.

431.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 431.

432.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 432.

433.    The allegations contained in Paragraph 433 contain speculation which requires no response. Defendants deny the underlying assumption that Embrace was "disregarding the required underwriting process." Defendants deny all remaining allegations contained in Paragraph 433.

434.    Defendants admit that Embrace made required certifications on FHA loans. Defendants lack sufficient information to admit or deny what importance the government did or did not attach to loan-level certifications and so deny that and related allegations. Defendants deny all remaining allegations contained in Paragraph 434.

435.    The regulations referenced in Paragraph 435 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 435.

436.    The regulations referenced in Paragraph 436 speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 436.

437.    HUD program requirements speak for themselves and are the best evidence of their contents and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 437.

438.    The regulations governing the FHA Program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 438.

439.    Defendants admit that FHA insured loans endorsed by Embrace consistent with the terms of the FHA program. Defendants specifically deny the allegation that Embrace made false statements in its annual certifications to the government and deny all remaining allegations contained in Paragraph 439.

440. Defendants admit that FHA insured loans endorsed by Embrace consistent with the terms of the FHA program. Defendants deny all remaining allegations contained in Paragraph 440.

441. HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 441.

442. Defendants admit that the government requires participants in the DE Program to comply with applicable regulations. Defendants further admit that the government at times engages in enforcement proceedings. Defendants deny all remaining allegations contained in Paragraph 442.

443. Defendants state that Plaintiff-Relator has mischaracterized the memorandum referred to in Paragraph 443, which memorandum was entered into in order to curb the excessive and abusive lawsuits filed by or on behalf of the United States that led to numerous lenders refusing to participate in FHA programs.

444. Defendants deny all allegations contained in Paragraph 444.

445. Defendants deny all allegations contained in Paragraph 445.

446. Defendants deny all allegations contained in Paragraph 446 and specifically deny the underlying premises of those allegations, that Embrace did not comply with FHA underwriting regulations and guidelines.

447. HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations in Paragraph 447.

448. Defendants deny all allegations contained in Paragraph 448 and specifically deny the underlying premises of those allegations, that Embrace did not comply with FHA underwriting regulations and guidelines.

449.    Defendants admit that Embrace made required certifications on FHA loans. Defendants lack sufficient information to admit or deny what importance the government did or did not attach to loan-level certifications and so deny that and related allegations. Defendants deny all remaining allegations contained in Paragraph 449.

450.    The regulations referenced in Paragraph 450 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 450.

451.    The regulations referenced in Paragraph 451 speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 451.

452.    The regulations and guidelines concerning the FHA program referenced in Paragraph 452 setting forth when the government will insure loans under the program speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 452.

453.    Defendants admit that the government extended FHA insurance coverage to loans endorsed by Embrace. Defendants deny all remaining allegations contained in Paragraph 453.

454.    Defendants admit that the government extended FHA insurance coverage to loans endorsed by Embrace. HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 454.

455.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants admit that the FHA Program has certain requirements in order for loans to be insured under the program. Defendants deny all remaining allegations contained in Paragraph 455.

456. HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants admit that the FHA Program has certain requirements in order for loans to be insured under the program. Defendants deny all remaining allegations contained in Paragraph 456.

457. Defendants specifically deny that Embrace engaged in a scheme of improper underwriting of FHA loans or submitted loans that it knew or should have known were improperly underwritten. Defendants deny all remaining allegations contained in Paragraph 457.

458. Defendants specifically deny that Embrace engaged in a scheme of improper underwriting of FHA loans or submitted loans that it knew or should have known were improperly underwritten. Defendants deny all remaining allegations contained in Paragraph 458.

459. Defendants specifically deny that Embrace engaged in a scheme of improper underwriting of FHA loans or submitted loans that it knew or should have known were improperly underwritten. Defendants deny all remaining allegations contained in Paragraph 459.

460. Defendants specifically deny that Embrace engaged in a scheme of improper underwriting of FHA loans or submitted loans that it knew or should have known were improperly underwritten. Defendants deny all remaining allegations contained in Paragraph 460.

461. Defendants lack sufficient information to admit or deny what a theoretical "reasonable person" would or would not do, and so deny. Defendants specifically deny wrongly certifying loans for insurance and deny all remaining allegations contained in Paragraph 461.

462. Defendants admit that Embrace made required certifications on FHA loans. Defendants lack sufficient information to admit or deny what importance the government did or did not attach to loan-level certifications and so deny that and related allegations. Defendants deny all remaining allegations contained in Paragraph 462.

463.    Defendants admit that the government has promulgated guidelines setting forth requirements to participate in the DE Program, which speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 463.

464.    Defendants admit that the government has promulgated guidelines setting forth requirements to participate in the DE Program, which speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 464.

465.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 465.

466.    Defendants admit that the government has promulgated guidelines setting forth requirements to participate in the DE Program, which speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 466.

467.    Defendants deny all allegations contained in Paragraph 467.

468.    Defendants admit that the government extended FHA insurance coverage to loans endorsed by Embrace. Defendants lack sufficient knowledge to admit or deny on what the government "based" its extension of insurance coverage and so deny. Defendants deny all remaining allegations contained in Paragraph 467.

469.    Defendants deny the underlying premise of Paragraph 469 that Embrace did not truthfully certify to the government that it was in conformance with FHA underwriting requirements. Defendants deny all remaining allegations contained in Paragraph 469.

470.    Defendants deny the underlying premise of Paragraph 470 that Embrace did not truthfully certify to the government that it was in conformance with FHA underwriting requirements. Defendants deny all remaining allegations contained in Paragraph 470.

471.    Defendants specifically deny that Embrace engaged in a scheme of improper underwriting of FHA loans or submitted loans that it knew or should have known were improperly underwritten. Defendants deny all remaining allegations contained in Paragraph 471.

***Allegations Regarding Embrace Submitted and Caused to be Submitted False Claims for Payment to HUD***

472.    Defendants specifically deny that Embrace submitted any false statements to FHA or HUD. Defendants further specifically deny that the loan files contained in the 2AC are representative examples of false claims or that they are emblematic of any scheme to submit false claims.

473.    Defendants deny the underlying premise of Paragraph 473 that Embrace did not truthfully certify to the government that it was in conformance with FHA underwriting requirements. Defendants deny all remaining allegations contained in Paragraph 473.

474.    Defendants deny the underlying premises of Paragraph 474 that Embrace falsely certified to the government that there was no defect in connection with any mortgage or that Embrace improperly approved any mortgage. Defendants deny all remaining allegations contained in Paragraph 474.

475.    Defendants deny all allegations contained in Paragraph 475.

476.    Defendants deny the underlying premises of Paragraph 476 that Embrace falsely certified to the government and that it was not in conformance with governmental underwriting requirements.  Defendants deny all remaining allegations contained in Paragraph 476.

477.    Defendants deny all allegations contained in Paragraph 477.

478.    Defendants deny the underlying premises of Paragraph 478 that Embrace falsely certified to the government and that it was not in conformance with governmental underwriting requirements. Defendants deny all remaining allegations contained in Paragraph 478.

479.    Defendants deny the underlying premises of Paragraph 479 that Embrace falsely certified to the government and that it improperly approved mortgages. Defendants deny all remaining allegations contained in Paragraph 479.

480.    Defendants deny all allegations contained in Paragraph 480.

481.    HUD program requirements speak for themselves and Defendants deny any characterization or interpretation inconsistent therewith.

482.    Defendants deny the underlying premises of Paragraph 482 that Embrace falsely certified to the government and that it was not in conformance with governmental underwriting requirements. Defendants deny all remaining allegations contained in Paragraph 482.

483.    Defendants deny the underlying premises of Paragraph 483 that Embrace falsely certified to the government and that it improperly approved mortgages. Defendants deny all remaining allegations contained in Paragraph 483.

484.    Defendants deny the underlying premises of Paragraph 484 that Embrace falsely certified to the government and that it improperly approved mortgages. Defendants deny all remaining allegations contained in this Paragraph 484.

485.    Defendants deny all allegations contained in Paragraph 485.

486.    Defendants deny the underlying premises of Paragraph 482 that Embrace falsely certified to the government and that it was not in conformance with governmental underwriting requirements. Defendants deny all remaining allegations contained in Paragraph 486.

487.    Defendants deny all allegations contained in Paragraph 487.

488.    Defendants deny all allegations contained in Paragraph 488.

***Allegations Regarding Noyce, Hardiman, Lamy Caused Embrace's False Statements***

489.    Defendants admit that Noyce, Hardiman, and Lamy were involved in the development of various policies and procedures at Embrace. Defendants deny that any Embrace policy or procedure was developed for the purpose of or had the effect of putting pressure on underwriters to approve ineligible loans or to cause underwriters to approve ineligible loans. Defendants deny all remaining allegations contained in Paragraph 489.

490.    Defendants admit that HUD notified Embrace by letter dated May 21, 2013, that it intended to terminate Embrace's authority to originate FHA loans in the Atlanta field office's jurisdiction for two years based on Embrace's default and claim rate, and that HUD withdrew this proposed termination less than two months later after further investigation into Embrace's actions over the previous 18 months to address its deficient claim rate, which included, *inter alia*, dismissal of underperforming branch management, addition of compliance and loss mitigation staff, contracting with multiple third-party consultants, and, eventually, closure of Embrace's two branches in the state of Georgia, all before receipt of HUD's letter. Defendants deny all remaining allegations contained in Paragraph 490.

491.    Defendants admit that Noyce and Lamy met with representatives of HUD's Office of Lender Activities and Program Compliance in Washington, D.C., in June 2013 regarding HUD's May 21, 2013 letter, at which they discussed the numerous steps Embrace had taken to address its underwriting in the jurisdiction of the Atlanta field office. Defendants deny that Embrace engaged in any fraud, failed to self-report loans in violation of any FHA guideline or regulation, or put undue pressure on underwriters to approve loans. Defendants further deny making any false statements during this meeting. Defendants deny all remaining allegations contained in Paragraph 491.

492.    Defendants admit that Noyce, Hardiman, and Lamy received quality control reports as part of Embrace's ongoing quality control efforts. Defendants deny all remaining allegations contained in Paragraph 492.

493.    Defendants deny the allegations of Paragraph 493.

494.    Defendants admit that Embrace's compliance and risk management components reported to Noyce. Defendants deny the allegations set forth in the second sentence of Paragraph 494. Defendants admit that Noyce, Hardiman, and Lamy were each to some degree responsible for compliance and risk management in their positions at Embrace, but deny that Noyce, Hardiman, and Lamy were "the executives responsible for compliance and risk management" at Embrace at any given time. Defendants deny that Noyce, Hardiman, and Lamy were the sole persons responsible for Embrace policies. Defendants deny that the "policies discussed above," to the extent that term means the alleged "policies" set forth in the 2AC, were actually policies at Embrace. Defendants deny all remaining allegations contained in Paragraph 494.

495.    Defendants admit that Noyce, Hardiman, and Lamy were each to some degree responsible for compliance and risk management in their positions at Embrace, but deny that Noyce, Hardiman, and Lamy were "the executives responsible for compliance and risk management" at Embrace at any given time. Defendants deny that Embrace failed to self-report loans in violation of HUD guidelines. Defendants deny all remaining allegations contained in Paragraph 495.

496.    Defendants deny all allegations contained in Paragraph 496.

***Allegations Regarding Embrace Retaliated Against Relator by Terminating Her in Violation of the FCA***

497.    Defendants deny all allegations contained in Paragraph 497.

498.    Paragraph 498 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 498 speaks for itself and

Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 498.

499.     Paragraph 499 contains legal conclusions which therefore require no response. To the extent a response is required, the statute referenced in Paragraph 499 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 499.

500.     Paragraph 500 contains legal conclusions which therefore require no response. To the extent a response is required, the statue referenced in Paragraphs 498 and 499 and apparently being referenced in Paragraph 500 speaks for itself and Defendants deny any characterization or interpretation inconsistent therewith. Defendants deny all remaining allegations contained in Paragraph 500.

501.     Defendants admit the allegations contained in Paragraph 501.

502.     Defendants deny all allegations contained in Paragraph 502.

503.     Defendants admit that Plaintiff-Relator frequently complained to Embrace management about its underwriting policies and procedures, whether or not related to FHA underwriting. Defendants deny that Plaintiff-Relator's complaints tended to have merit. Defendants deny the remaining allegations contained in Paragraph 503.

504.     Defendants admit that Sara Davis and Claudia Mobilia met with Plaintiff-Relator in or around late October 2018. Defendants deny the remaining allegations contained in Paragraph 504.

505.     Defendants deny all allegations contained in Paragraph 505.

506.     Defendants deny all allegations contained in Paragraph 506.

507.     Defendants deny all allegations contained in Paragraph 507.

## FIRST CAUSE OF ACTION
### 31 U.S.C. § 3729(a)(1)(a)
### Causing False Claims

508.    Defendants incorporate by reference, as if fully set forth herein, their responses to Paragraphs 1 through 507, inclusive.

509.    Defendants deny that Plaintiff-Relator is entitled to any relief against Defendants under the False Claims Act . Defendants deny the remaining allegations of Paragraph 509.

510.    Defendants deny all allegations contained in Paragraph 510.

511.    Defendants deny all allegations contained in Paragraph 511.

512.    Defendants deny all allegations contained in Paragraph 512.

513.    Defendants deny all allegations contained in Paragraph 513.

## SECOND CAUSE OF ACTION
### 31 U.S.C. § 3729(a)(1)(B)
### Use of False Statements

514.    Defendants incorporate by reference, as if fully set forth herein, their responses to Paragraphs 1 through 513, inclusive.

515.    Defendants deny that Plaintiff-Relator is entitled to any relief against Defendants under the False Claims Act. Defendants deny the remaining allegations of Paragraph 515.

516.    Defendants deny all allegations contained in Paragraph 516.

517.    Defendants deny all allegations contained in Paragraph 517.

518.    Defendants deny all allegations contained in Paragraph 518.

519.    Defendants deny all allegations contained in Paragraph 519.

## THIRD CAUSE OF ACTION
### 31 U.S.C. § 3730(h)
### Unlawful Retaliation Under the False Claims Act

520.    Defendants incorporate by reference, as if fully set forth herein, their responses to Paragraphs 1 through 519, inclusive.

521.    Defendants deny that Plaintiff is entitled to any relief against Defendants under the False Claims Act. Defendants deny all remaining allegations of Paragraph 521.

522.    Paragraph 522 quotes a statute of the False Claims Act that speaks for itself. Defendants deny any characterization or interpretation of the statute. Defendants deny the remaining allegations of Paragraph 522.

523.    Defendants deny all allegations contained in Paragraph 523.

524.    Defendants deny all allegations contained in Paragraph 524.

525.    Defendants deny all allegations contained in Paragraph 525.

526.    Defendants deny all allegations contained in Paragraph 526.

527.    Defendants deny all allegations contained in Paragraph 527.

## DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred in whole or in part by the applicable statues of limitations.

### SECOND DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

### THIRD DEFENSE

Plaintiff's claims are barred in whole or in part by waiver.

### FOURTH DEFENSE

Plaintiff's claims are barred in whole or in part by waiver.

### RESERVATION OF ADDITIONAL DEFENSES

Defendants reserve the right to assert and pursue additional defenses at trial.

### RELIEF SOUGHT

WHEREFORE, Defendants respectfully request that this Court:

A.    Deny the relief sought by Plaintiff-Relator in the 2AC;

B.    Dismiss the 2AC against Defendants with prejudice as to all Counts;

C.    Enter judgment in favor of Defendants and against Plaintiff-Relator on all claims;

D.    Award such other and further relief as this Court deems just and equitable.

Dated: July 31, 2023                Respectfully submitted,

                                    */s/ Constantinos G. Panagopoulos*
                                    Constantinos G. Panagopoulos (admitted per LR Gen 201(5))
                                    Christopher A. Hatfield (admitted per LR Gen 201(5))
                                    BALLARD SPAHR LLP
                                    1909 K Street NW, 12th Floor
                                    Washington, DC 20006
                                    Telephone: 202-661-2200
                                    Facsimile: 202-661-2299
                                    E-mail: cgp@ballardspahr.com
                                    E-mail: hatfieldc@ballardspahr.com

                                    Patricia K. Rocha (#2793)
                                    Patrick N. Sampson (#9885)
                                    ADLER POLLOCK & SHEEHAN P.C.
                                    One Citizens Plaza, 8th Floor
                                    Providence, RI 02903-1345
                                    Telephone: 401-274-7200
                                    Fax: 401-351-4607
                                    E-mail: procha@apslaw.com
                                    E-mail: psampson@apslaw.com

                                    *Attorneys for Defendants Embrace Home Loans, Inc., Dennis Hardiman, Kurt Noyce, and Robert Lamy*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 31st day of July 2023, I caused a true and correct copy of the foregoing Answer to Second Amended *Qui Tam* Complaint and Demand for Jury Trial via the CM/ECF system, which will send a copy to all counsel of record.

          /s/ *Christopher A. Hatfield*
          Christopher A. Hatfield